IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVE JOHNSON

    v.               :    Civil Action No. DKC 10-0582

PRINCE GEORGE'S COUNTY,
MARYLAND, et al.

### MEMORANDUM OPINION

Two motions are presently pending and ready for resolution in this civil rights action: (1) a motion to dismiss or, in the alternative, for summary judgment filed by Defendants Prince George's County and Prince George's County Police Officer Ruben Paz (ECF No. 20); and (2) a motion to strike certain exhibits to Plaintiff Steve Johnson's opposition, which was also filed by Defendants (ECF No. 26). Because the issues have been fully briefed and no hearing is necessary, the court now rules. *See* Local Rule 105.6. For the reasons that follow, Defendants' motion to dismiss or for summary judgment, construed as a motion for summary judgment, will be granted in part and denied in part. In addition, Defendants' motion to strike will be denied.[1]

---

[1] Defendants filed a motion pursuant to Federal Rule of Civil Procedure 12(f) to strike Exhibits 4 and 5 of Johnson's opposition (ECF Nos. 24-4, 24-5) to Defendants' motion for summary judgment. (*See* ECF No. 26). Rule 12(f) allows a court to strike from a pleading "redundant, immaterial, impertinent, or scandalous matter." Defendants' motion, however, does not

## I.  Background

### A.  Factual Background

The parties agree on few of the relevant facts of this case.  They agree that early on the morning of September 5, 2009, Prince George's County Police Officers Ruben Paz and Richard Clark responded to a call complaining of disorderly conduct at 7625 Ingrid Place in Landover.  Somehow, the situation escalated and Officer Paz sprayed Plaintiff Steve Johnson in the face with Oleoresin Capsicum ("O.C.") spray.[2]  Johnson ended up on the ground.  He was then arrested and criminally charged.  Those charges were later dismissed *nolle prosequi*.

Beyond these basic facts, there is little accord.

---

seek to strike any portion of a "pleading," but rather certain exhibits to a motion.  Under Rule 7(a), motions, memoranda, and the exhibits attached to them are not pleadings.  *See also Manson v. Inge*, 13 F.2d 567, 568 (4th Cir. 1926) (defining pleadings as "allegations made by the parties to a civil or criminal case, for the purpose of definitely presenting the issue to be tried and determined between them").  Consequently, the court cannot strike the challenged exhibits.  *See MJ Harbor Hotel, LLC v. McCormick & Schmick Rest. Corp.*, 599 F.Supp.2d 612, 623 (D.Md. 2009); *Thomas v. BET Sound-Stage Rest./BrettCo, Inc.*, 61 F.Supp.2d 448, 458 (D.Md. 1999).  Even though the exhibits will not be stricken, it is nevertheless largely inappropriate to rely on them in deciding the motion, for reasons explained below.

[2]  OC spray is commonly referred to as pepper spray.

According to Johnson, he was standing on the sidewalk with one another friend on the night in question. (ECF No. 24-1 ¶ 2). Two police officers approached the two men, and one of the officers ordered the men to "[s]it down on the ground." (*Id.*). When Johnson asked the officer why, the officer repeated his request. (*Id.*). Johnson asked again "whether there was a reason why [he] should be sitting on the ground" and whether he was under arrest. (*Id.*). The questioning officer then purportedly approached Johnson and sprayed him in the face with OC spray. (*Id.*). The two officers allegedly tackled him, threw him to the ground, and began beating him with nightsticks, causing substantial bruising. (*Id.;* ECF No. 16-2). When an ambulance arrived, the officers "waived the ambulance off" and refused to allow medical treatment. (ECF No. 24-1 ¶ 2). Johnson was arrested and charged with disorderly conduct, resisting arrest, and "failing to obey the lawful order of a police [officer] designed to prevent a disturbance of the peace," crimes Johnson says he did not commit. (*Id.* ¶¶ 5-6; ECF No. 24-3).

Johnson emphasizes that he was not with a large group of people that night, was not behaving in a disorderly manner, did not resist arrest or otherwise fail to cooperate with police,

and cooperated when he was taken to the Department of Corrections. (ECF No. 24-1 ¶¶ 3-4).

Officers Clark and Pax tell a different story. They say that they responded to a call at 7625 Ingrid Place that reported "several males being loud and disorderly and smoking in the area in question." (ECF No. 20-4 ¶¶ 5-7; *see also* ECF No. 20-5 ¶¶ 5-7). When the officers arrived on the scene, they did in fact find a group of males "behaving in a loud and disorderly fashion." (ECF No. 20-4 ¶ 9; *see also* ECF No. 20-5 ¶ 9). From the cruiser, Officer Paz told the group to disperse. (ECF Nos. 20-4 ¶ 10; 20-5 ¶ 10). According to the officers, everyone complied except for Johnson. (ECF Nos. 20-4 ¶ 11; 20-5 ¶ 11). Officer Paz told Johnson again to leave the area and asked him where he lived; Johnson purportedly responded that it was none of the officer's business. (ECF Nos. 20-4 ¶ 14-15; 20-5 ¶ 14-15). When Officer Paz told Johnson that he would need to leave if he did not live in the area, Johnson responded that he did not live in the area and "he was not going any fu__ing where." (ECF Nos. 20-4 ¶ 17; 20-5 ¶ 17).

Officers Paz and Clark then got out of their cruiser and ordered Johnson to produce identification. (ECF Nos. 20-4 ¶ 18; 20-5 ¶ 18). He allegedly answered that he "did not have to provide sh--t." (ECF Nos. 20-4 ¶ 19; 20-5 ¶ 19). Officer Paz

again told Johnson that he would need to produce identification and "verify the nature of his business at the location." (ECF Nos. 20-4 ¶ 20; 20-5 ¶ 20). Because Officer Paz noticed that Johnson had his hands in his pockets, he also ordered him to show his hands for safety reasons. (ECF Nos. 20-4 ¶ 24; 20-5 ¶ 24). Once more, Johnson responded in a hostile manner, allegedly asking the officers to "give him a fuc—ing reason why he should do that." (ECF Nos. 20-4 ¶ 24; 20-5 ¶ 24). Officer Clark again commanded Johnson to take his hands out of his pockets, but he still refused to comply. (ECF Nos. 20-4 ¶¶ 25-26; 20-5 ¶¶ 25-26).

Officer Paz then tried to place Johnson under arrest, but Johnson jerked his arms and moved around such that the officer could not grab his hands. (ECF Nos. 20-4 ¶¶ 27-28; 20-5 ¶¶ 27-28). After "announc[ing]" that he had O.C. spray twice (ECF No. 20-4 ¶ 29), Officer Paz sprayed Johnson with a burst of the spray for one second in the face (ECF Nos. 20-4 ¶¶ 29-30; 20-5 ¶ 29). Johnson fell to the ground and, after some struggling, the officers were together able to cuff him. (ECF Nos. 20-4 ¶¶ 31-33; 20-5 ¶¶ 30-31).

Once he was cuffed, the officers decontaminated Johnson with water. (ECF Nos. 20-4 ¶ 34; 20-5 ¶ 32). Fireboard personnel arrived and also decontaminated him. (ECF Nos. 20-4

¶¶ 35-36; 20-5 ¶¶ 33-34). Because he was not injured and he refused to treatment, Johnson was not taken to the hospital but instead was transported to the DOC. (ECF Nos. 20-4 ¶¶ 37-39, 43; 20-5 ¶¶ 35[a], 32[b], 36; 20-6 ¶¶ 10-13). At DOC, Johnson allegedly refused to cooperate by providing necessary information. (ECF Nos. 20-4 ¶ 40; 20-5 ¶¶ 33). After processing, Johnson appeared before a district court commissioner who found probable cause for all charges. (ECF Nos. 20-4 ¶ 41; 20-5 ¶¶ 34; *see generally* ECF Nos. 20-4, Ex. 1.3; 20-5, Ex. 2.3).

Both officers emphasize that they "never hit, beat, kicked, used the asp baton, or injured Johnson." (ECF Nos. 20-4 ¶ 43; 20-5 ¶ 36). A later Prince George's Police Department investigation also concluded that Officer Paz's use of O.C. spray was authorized by department policy. (ECF No. 20-6 ¶¶ 18-19).

**B. Procedural Background**

Johnson initially filed his complaint in this case on January 27, 2010 in the Circuit Court for Prince George's County. (ECF No. 1). That complaint asserted six counts against Officer Paz: assault, battery, negligence, false arrest, excessive force pursuant to 42 U.S.C. § 1983, and arrest without probable cause pursuant to 42 U.S.C. § 1983. (ECF No.

2). It also stated two counts pursuant to Section 1983 against Prince George's County premised on excessive force and arrest without probable cause. (*Id.*). After receiving the Summons and Complaint on February 23, Prince George's County[3] timely removed the matter to this court on March 8, 2010. (ECF No. 1). Defendants filed a motion to dismiss or, in the alternative, for summary judgment on March 26, 2010 (ECF No. 14), but that motion and an accompanying motion to strike (ECF No. 19) were mooted when Johnson was granted leave to amend[4] on April 26 (ECF No. 21).[5] On April 23, 2010 – before the amended complaint had even been accepted and docketed by the court – Defendants filed a motion to dismiss or, in the alternative, for summary judgment directed at the amended complaint. (ECF No. 20). Johnson opposed. (ECF No. 24). Concurrent with their reply (ECF No. 25), Defendants filed another motion to strike (ECF No. 26).

---

[3]     Officer Paz did not join in the notice of removal because he had not yet been served.

[4]     Although he requested leave to amend on April 6, 2010 (ECF No. 15), Johnson was free to amend as a matter of course because it was still within 21 after service of Defendants' Rule 12(b) motion.

[5]     The amended complaint restates the same counts as the original complaint, but with additional facts. (ECF No. 22).

## II.  Standard of Review

Defendants have moved to dismiss or, in the alternative, for summary judgment.  A court considers only the pleadings when deciding a Rule 12(b)(6) motion to dismiss.  Because Defendants' motion relies extensively on matters outside the pleadings, the court will construe it as a motion for summary judgment.  *See* Fed.R.Civ.P. 12(b); *see also Walker v. True*, 399 F.3d 315, 319 n.2 (4th Cir. 2005); *Offen v. Brenner*, 553 F.Supp.2d 565, 568 (D.Md. 2008).

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v.*

*Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50.  (citations omitted).  At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett,* 532 F.3d at 297.

## III. Analysis

### A.    Claims Against Officer Paz

### 1.    Constitutional Claims

Pursuant to Section 1983, Johnson asserts that Officer Paz violated his constitutional rights "to be free from the use of excessive force" and "to be free from arrest without probable cause."  Defendants argue that summary judgment should be granted as to both claims.

First, Johnson alleges that his seizure and arrest violated his Fourth Amendment right in that it was effectuated without probable cause.  "Probable cause requires more than bare suspicion but requires less than evidence necessary to convict." *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998).  Probable

cause is based on the "factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act." *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004) (citing *Ornelas v. United States*, 517 U.S. 690, 695-96, (1996)). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). A court will examine the events leading up to the arrest, and then decide whether these facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

Viewing the facts in the light most favorable to Johnson, it cannot be said as a matter of law that the officers had probable cause to seize him. Defendants suggest that the seizure was reasonable because Johnson was disorderly, refused to comply with any of the officers' orders, and physically resisted when Officer Paz attempted to place him under arrest. According to Johnson, however, he merely asked two questions when the officers arrived on scene and began commanding him to sit on the ground. He was then sprayed with OC spray and arrested. Johnson's account does not present facts establishing probable cause.

Throughout their opposition, Defendants make much of the fact that a Maryland state district court commissioner (apparently during Johnson's initial appearance pursuant to Maryland Rule 4-216) determined that "probable cause existed for all three charges" against Johnson. There is no authority supporting Defendants' notion that the commissioner's determination is entitled to some weight in a case such as this one.[6] The district court commissioner's only responsibility was to determine whether the affidavit presented by the arresting officer contained facts supporting probable cause that the defendant committed the offense charged. *State v. Smith*, 305 Md. 489, 501 (1986). In the present action, however, Johnson contends that the facts as alleged by the officers are untrue. If Johnson successfully demonstrates that the officers'

---

[6] Defendants cite *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991), wherein the United States Court of Appeals for the Fourth Circuit determined that a state magistrate's finding of probable cause on an arrest warrant "provide[d] additional support for [an officer's] claim that he acted with objective reasonableness." That reasonableness supported a finding of qualified immunity. *Id.* In *Torchinksy*, however, the officer obtained a warrant *before* he arrested the suspect; thus, it was not the magistrate's decision *per se* that suggested reasonableness, but the officer's choice to seek the determination before pursuing the arrest. *Id.* Moreover, unlike this case, the plaintiffs in *Torchinsky* "proffered no evidence to rebut [the officer]'s sworn statement." *Id.* at 262.

statements are in fact incorrect, a commissioner's determination based on those misstatements would be entitled to no weight. *Cf. Miller v. Prince George's Cnty., Md.*, 475 F.3d 621, 632 (4th Cir. 2007) ("A magistrate's issuance of the warrant will not shield an officer when . . . the underlying affidavit includes deliberate and reckless misstatements and omissions.").

Second, Johnson contends that the officers used excessive force. The Fourth Amendment right to be free from unreasonable searches and seizures protects an individual's right to be free from excessive force during an arrest. *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003). Courts must use a standard of "objective reasonableness" to determine whether force used by police officers was excessive in violation of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 388 (1989). The question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force. *Id.* at 395. Factors to consider include the severity of the crime, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee. *Id.* at 396.

"A reviewing court must make 'allowance for the fact that police officers are often forced to make split-second judgments

- in circumstances that are tense, uncertain, and rapidly evolving.'" *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001) (quoting *Graham*, 390 U.S. at 397). "The court's focus should be on the circumstances at the moment force was used and on the fact that officers on the beat are not often afforded the luxury of armchair reflection." *Anderson*, 247 F.3d at 130 (quoting *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996) (citations omitted)).

Taking the facts in light most favorable to Johnson, the force allegedly used here would not be objectively reasonable. Johnson alleges he was not committing any crime. The unarmed Johnson did not pose any obvious threat to the two officers or anyone else. He was not resisting arrest and by all accounts was not attempting to flee.[7] Put simply, Johnson's affidavit suggests that none of the relevant *Graham* factors favor Defendants. If the sworn testimony of Johnson proves true, it would have been entirely unreasonable to tackle Johnson, beat him with nightsticks, and spray him in the face with pepper spray. *See, e.g.*, *Park v. Shiflett*, 250 F.3d 843, 853 (4th Cir. 2001) (finding use of pepper spray excessive when used to restrain unarmed individual who posed no threat).

---

[7]   Indeed, even the officers allege that the incident began with Johnson's *refusal* to leave the scene.

Defendants also contend that, even if Johnson created a genuine dispute of material fact as to the constitutional violations, Officer Paz is still entitled to qualified immunity. The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In deciding whether qualified immunity applies, the court must make two determinations. First, it must consider whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the evidence does establish a violation of a constitutional right, the court should assess whether the right was "clearly established" at the time of the events at issue. *Id.*[8] "The answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds."

---

[8]    The court may decide which question to consider first "in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

*Henry v. Purnell*, 501 F.3d 374, 377 (4th Cir. 2007) (quoting
*Batten v. Gomez*, 324 F.3d 288, 293-94 (4th Cir. 2003)).

Because Johnson has presented facts supporting
constitutional violations, the only remaining question is
whether the relevant rights were clearly established at the time
of the events, such that officials had "'fair warning' that
their conduct was unconstitutional."[9] *Ridpath v. Bd. of
Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006).
"[T]he contours of the right must be sufficiently clear that a
reasonable official would understand that what he is doing
violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640
(1987). "[A]lthough the exact conduct at issue need not have
been held to be unlawful in order for the law governing an
officer's actions to be clearly established, the existing
authority must be such that the unlawfulness of the conduct is
manifest." *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998).
If the right was not clearly established, then qualified
immunity shields the officer from liability.

---

[9]    "The existence of disputed material facts – which must
be submitted to a jury – does not alter the 'essentially legal'
nature of the question of whether the right at issue was clearly
established." *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir.
2005) (citation omitted).

The rights implicated here were clearly established at the time of the incident. Even in the more permissive Eighth Amendment context, "[i]t is generally recognized that it is a [constitutional] violation . . . to use mace, tear gas, or other chemical agents in quantities greater than necessary." *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (quotation marks omitted). If the events described in Johnson's sworn affidavit are true, no reasonable officer could have believed that it was appropriate to tackle, beat, and spray with a chemical agent an individual who was merely present at the scene of a police call and asked the officer reasonable questions. *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994) (finding officer was not entitled to qualified immunity where arrestee was at most guilty of minor offense, was unarmed and posed no danger to others, and facts regarding resistance to arrest were disputed). As the Seventh Circuit has explained, "[i]n the situation the plaintiffs describe, it is clearly established that officers may not, without provocation, start beating, pepper-spraying, kicking, and otherwise mistreating people standing around a . . . parking lot (even in the middle of the night)." *Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009). As for Johnson's claim based on arrest without probable cause, "the Fourth Amendment right to be arrested only on probable cause is

clearly established." *Henderson v. Simms*, 223 F.3d 267, 273 (4th Cir. 2000). More specifically, no reasonable officer could conclude that a person's mere presence at the scene of a disturbance call, combined with his posing of innocuous questions, would amount to probable cause. *Cf. Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996) ("That one is merely present at the scene of a crime . . . is not, by itself, sufficient to establish probable cause." (quotation marks omitted)).

Therefore, summary judgment cannot be granted on Johnson's Section 1983 claims against Officer Paz.

### 2. State Law Tort Claims

Johnson also asserts four state law tort claims against Officer Paz: assault, battery, false arrest, and negligence. Summary judgment cannot be granted on any of these claims.

First, Johnson advances three intentional tort claims against Officer Paz: one count of battery, one count of assault, and one count of false arrest. "A battery occurs when one intends a harmful or offensive contact with another without that person's consent." *Nelson v. Carroll*, 355 Md. 593, 601 (1999); *accord Johnson v. Valu Food, Inc.*, 132 Md.App. 118, 123 (2000). An assault is an attempt to do the same. *Cont'l Cas. Co. v. Mirabile*, 52 Md.App. 387, 398 (1982); *accord Lee v. Pfeifer*, 916

17

F.Supp. 501, 505-06 (D.Md. 1996). False arrest is another intentional tort that occurs when three elements are present: "'1) the deprivation of the liberty of another; 2) without [his] consent; and 3) without legal justification.'" *Dett v. State*, 161 Md.App. 429, 441 (2005) (quoting *Heron v. Strader*, 361 Md. 258, 264 (2000)). Defendants note that claims of assault, battery, and false arrest can only advance "when there is no legal authority or justification" for the officer's actions. *Hines v. French*, 157 Md.App. 536, 551 (2004) (quoting *Williams v. Prince George's Cnty.*, 112 Md.App. 526, 554 (1996)); *Dett*, 161 Md.App. at 441.

Johnson has presented facts that, if proven, would establish that the beating he received was unprovoked and the arrest was without probable cause. Thus, the assault, battery, and false arrest would all be without legal justification. Even so, Defendants suggest that Johnson's assault and battery claims fail because Johnson has not shown malice. Malice is not an element of these offenses – it is only required in certain cases to overcome a valid defense of public official immunity.

Public official immunity would not apply to Johnson's intentional tort claims.[10] "In Maryland, public official

---

[10] Defendants apparently acknowledge that public official immunity does not generally apply to intentional acts. (ECF NO.

18

immunity is recognized both at common law and by statute."[11] *City of District Heights v. Denny*, 123 Md.App. 508, 516 (1998). Common law public official immunity does not apply to intentional or constitutional torts. *Houghton v. Forrest*, 412 Md. 578, 586 (2010) (common law public official immunity does not apply to intentional torts); *Higginbotham v. Pub. Serv. Comm'n of Md.*, 412 Md. 112, 130 (2009) (same). Maryland courts have "pointed out that the purpose of these provisions was to codify existing public official immunity, and not to extend the scope of qualified immunity beyond its Maryland common law boundaries." *Houghton v. Forrest*, 183 Md.App. 15, 40 (2008), *rev'd on other grounds by* 412 Md. 578 (2010) (stating that Section "5-507's legislative history indicates that it does not apply to intentional and constitutional torts"); *see also Prince George's Cnty. v. Brent*, 414 Md. 334, 355, 995 A.2d 672 (2010) ("The immunity contemplated in [Section 5-507] is common law

20-2, at 19). Even so, they cite *Goehring v. United States*, 870 F.Supp. 106, 108 (D.Md. 1994), for the notion that malice must be shown to hold a law enforcement official liable for assault and battery. *Goehring* in turn relies on a public official immunity case for that idea. *Id.* (citing *Davis v. Muse*, 51 Md.App. 93, 100 (1982)).

[11]    Although the statute refers only to officials of *municipal* corporations, it nevertheless "applies to county as well as municipal officials." *Livesay v. Baltimore Cnty.*, 384 Md. 1, 12 (2004).

public official immunity."); *Lee v. Cline*, 384 Md. 245, 259 n.2 (2004) (quoting *Lovelace v. Anderson*, 366 Md. 690, 704, 785 A.2d 726 (2001)) (internal quotation marks omitted). Therefore, neither statutory nor common law public official immunity applies to the intentional tort claims of assault, battery, and false arrest. Johnson need not show malice on those claims. Johnson's intentional tort claims may proceed.

As to Johnson's negligence claim, Defendants rely on public official immunity. Officer Paz could invoke the doctrine as a defense if he can show (1) that he was acting in a discretionary capacity, (2) he was acting without malice, and (3) he was acting within the scope of his employment. The parties focus on the second of these elements: malice. Malice in this context means "actual malice," that is, "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will, or fraud." *Lee v. Cline*, 384 Md. 245, 268 (2004) (quotation marks omitted); *see also Shoemaker v. Smith*, 353 Md. 143, 163 (1999) ("The Court of Special Appeals has long applied that, or some similar, standard of 'actual malice' in defining 'malice' for purposes of public official immunity under common law or under State and local tort claims laws."). Defendants suggest Officer Paz did not act with malice, but Johnson has presented evidence that the incident began when

Officer Paz responded to Johnson's ordinary questions with pepper spray, threw Johnson to the ground, and beat him with a nightstick. Such facts evidence malice. *Sawyer v. Humphries*, 322 Md. 247, 261 (1991) ("Wrestling another to the ground, pulling his hair, and hitting him on the face, again without cause or provocation, is certainly malicious conduct."); *see also Solis v. Prince George's Cnty.*, 153 F.Supp.2d 793, 805 (D.Md. 2001) ("Officer Ruffin choked Plaintiff and struck him multiple times for no apparent reason. Such unjustified application of malignant force may give rise to a reasonable inference that Officer Ruffin was motivated by ill will toward or an affirmative intent to injure Plaintiff."). Summary judgment on this count, like the other counts against Officer Paz, cannot be granted.

### B.  Claims Against Prince George's County

Johnson also asserts Section 1983 claims against Prince George's County (and Officer Paz in his official capacity) premised on excessive force and arrest without probable cause. Recognizing that he cannot bring Section 1983 claims against the County based on *respondeat superior* liability, *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 690-95 (1978), Johnson instead alleges that "Officer Paz's actions are the result of Prince George's County's custom, policy, and practice

of failing to properly hire, train, and supervise its police officers and the County's deliberate indifference" to widespread uses of excessive force and instances of false arrest. (ECF No. 22 ¶¶ 32, 40).

"A county may be found liable under 42 U.S.C. § 1983 only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Wolf v. Fauquier Cnty. Bd. of Supervisors*, 555 F.3d 311, 321 (4th Cir. 2009). A policy means more than formal legislative enactments; "it may also be found in formal or informal ad hoc 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy." *Kirby v. City of Elizabeth City, N.C.*, 388 F.3d 440, 451 (4th Cir. 2004) (quotation marks omitted); *see also Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 522 (4th Cir. 2000) ("A government policy or custom need not have received formal approval through the municipality's official decisionmaking channels to subject the municipality to liability."). For instance, "[i]f a police force develops an unconstitutional 'custom or usage,' i.e., a widespread practice of a particular unconstitutional method, such custom or usage may be the basis for municipal liability." *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 210 (4th

Cir. 2002). To establish a municipal policy through this method of proof, a plaintiff must provide evidence of a "widespread and permanent practice," *Carter v. Morris*, 164 F.3d 215, 220 (4th Cir. 1999), or produce recorded reports to or discussions by a municipal government body, *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987). "It is well settled that isolated incidents of unconstitutional conduct by subordinate employees are not sufficient." *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003) (quotation marks omitted).

Johnson provides two forms of purported evidence of Prince George's County's alleged customs and practices. First, he presents five "notice of claim" letters submitted to Prince George's County or the State of Maryland by five other individuals. (ECF No. 24-4). These letters request damages from the County or State based on one alleged instance of false arrest (committed by a Prince George's County Deputy Sheriff), three instances of excessive force and false arrest (all committed by Prince George's County Police officers), and one instance of only excessive force (committed by a Prince George's County Corrections officer). As an initial matter, to the extent Johnson offers these claim letters to prove the facts contained in them, they would constitute inadmissible hearsay. *Eddy v. Waffle House, Inc.*, 482 F.3d 674, 682 (4th Cir. 2007),

23

*rev'd on other grounds by* 554 U.S. 911 (2008) (stating "evidence
of other lawsuits and complaints" would constitute hearsay if
introduced to prove facts alleged therein). "[H]earsay
evidence, which is inadmissible at trial, cannot be considered
on a motion for summary judgment." *Md. Highways Contractors
Ass'n, Inc. v. State of Md.*, 933 F.2d 1246, 1251 (4th Cir. 1991).

Even overlooking that issue, the mere existence of claims
against Prince George's County does not establish the requisite
widespread practice of approving excessive force. That would
require an assumption that all the allegations in those claim
letters were true. As one court explained:

> [T]he mere fact that a number of lawsuits
> have been filed, [or, in this case, might be
> filed in the future,] without any
> information as to whether the suits are
> meritorious or spurious, or alternatively,
> any evidence that the municipality ignored
> such complaints such that it constituted
> deliberate indifference to any potential
> problem of excessive force, does not assist
> a fact-finder in determining whether the
> [municipality] actually has a historical
> problem of its . . . officers using
> unconstitutionally excessive force in the
> performance of their duties.

*Ostroski v. Town of Southold*, 443 F.Supp.2d 325, 346 (E.D.N.Y.
2006) (listing cases).[12]

---

[12]  Moreover, two of the letters do not even involve acts
by Prince George's County police officers. They are not useful
evidence. *See, e.g.*, *Vizbaras v. Prieber*, 761 F.2d 1013, 1017

24

Johnson also provides a second category of supposed evidence: five printouts of internet webpages containing articles about alleged police abuses in Prince George's County. (ECF No. 24-5). The printouts include an article from the "Maryland Accident Law Blog," an article that references in passing a case brought against Prince George's County by the Department of Justice's Civil Rights Division, and three articles from 2001 detailing alleged abuses by the Prince George's County Police Department. These articles suffer from many of the same deficiencies as the claim letters, but the most glaring of these is the fact that the internet articles are unauthenticated hearsay. *See United States v. Heijnen*, 149 F.App'x 165, 169 (4th Cir. 2005) (concluding that "documents downloaded from the internet . . . are hearsay"); *accord United States v. Jackson*, 208 F.3d 633, 637 (7th Cir. 2000). Such articles are analogous to the newspaper articles that courts in this circuit have frequently recognized as hearsay. *See, e.g., Gantt v. Whitaker*, 57 F.App'x 141, 150 (4th Cir. 2003) ("This circuit has consistently held that newspaper articles are

(4th Cir. 1985) ("As the Vizbarases did not offer any evidence of other alleged incidents involving the use of excessive force *by the County police officers*, we hold that the district court did not err in dismissing the Vizbarases' claim against the County." (emphasis added)).

inadmissible hearsay to the extent that they are introduced to prove the factual matters asserted therein." (quotation marks omitted)); *Russ v. Causey*, 732 F.Supp.2d 589, 596 n.1 (E.D.N.C. 2010); *Precision Components, Inc. v. C.W. Bearing USA, Inc.*, 630 F.Supp.2d 635, 641 (W.D.N.C. 2008); *United States v. Bradshaw*, 541 F.Supp. 884, 886 (D.Md. 1982). Moreover, as Judge Grimm thoroughly explained in *Lorraine v. Markel American Insurance Co.*, 241 F.R.D. 534, 541-62 (D.Md. 2007), electronically stored information must be properly authenticated. Johnson has not attempted to do so. When evidence from the internet is presented without adornment – without any attempt at authentication or any explanation as to how the hearsay rules are satisfied – it "is adequate for almost nothing." *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F.Supp.2d 773, 775 (S.D.Tex. 1999).

Thus, on the present record, Johnson's claim against Prince George's County could not survive summary judgment. But Johnson also argues that summary judgment is inappropriate because he has not had sufficient opportunity for discovery. In particular, he states:

> I have not been able to obtain additional evidence on the customs, policies, and practices of the Prince George's County Police Department because the evidence that I need, i.e., records of sustained claims, complaints, and lawsuits alleging false

> arrest and police brutality against the
> Prince George's County Police Department,
> [as well as] training records and procedures
> and police department general orders[,] is
> exclusively within the control of Prince
> George's County.

(ECF No. 24-1 ¶ 9).  That statement is an apparent attempt to invoke Rule 56(d) (formerly Rule 56(f)) of the Federal Rules of Civil Procedure.  Defendants suggest that such a statement is not sufficiently specific to justify further discovery.  (ECF No. 27, at 2-5).

As a general matter, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986). On the other hand, the party opposing summary judgment cannot bemoan the lack of discovery unless he opposes the summary judgment motion on the basis that more time for discovery is needed.  *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996).  The non-movant must make it clear to the court that more discovery is needed pursuant to Rule 56(d), which provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . defer considering the motion."  "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of

27

Rule 56[(d)] in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quotation marks omitted).

Johnson's declaration, although admittedly rather bare bones in form, justifies denying Defendants' motion as premature. "Generally speaking, sufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party." *Id.* at 246-47 (quotation marks and brackets omitted). Here, Johnson has stated that the evidence he needs to establish his "policy or custom" claim – other allegations and investigations regarding excessive force and false arrest – are within the control of Prince George's County. Therefore, with one exception addressed below, the court will deny without prejudice Defendants' motion for summary judgment on the claims against Prince George's County.[13]

_____

[13] Citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), Defendants also suggest that Johnson inadequately pled his policy and practice claims by insufficiently identifying the relevant policy or practice. The complaint is sufficient, as it identifies the wrongful policy as a failure to train, hire, supervise, and cease certain unlawful conduct by County Police officers.

Johnson's complaint also seeks, punitive damages from the County. "Maryland law disallows any such assessment of punitive damages against a county." *Robles v. Prince George's Cnty., Md.*, 302 F.3d 262, 273 (4th Cir. 2002) (citing Md. Cts & Jud. Proc. Art. § 5-303(c)(1)); *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (finding municipalities immune from punitive damages under Section 1983). Johnson will not be permitted to pursue any claims for punitive damages against the County.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss or for summary judgment, construed as a motion for summary judgment, will be granted in part and denied in part. In addition, Defendants' motion to strike will be denied. A separate order will follow.

              /s/

DEBORAH K. CHASANOW
United States District Judge
