IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVE JOHNSON :

v. : Civil Action No. DKC 10-0582

PRINCE GEORGE'S COUNTY, MARYLAND, et al. :

**MEMORANDUM OPINION**

Presently pending and ready for review in this civil rights case is the motion for summary judgment filed by Defendant Ruben Paz (ECF No. 55). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be denied.

## I. Background

### A. Factual Background

As set forth in detail in the memorandum opinion dated March 1, 2011 (ECF No. 29), there is little accord about the material facts in this case. The parties agree that early on the morning of September 5, 2009, Prince George's County Police Officers Ruben Paz and Richard Clark responded to a call complaining of disorderly conduct at 7625 Ingrid Place in Landover, Maryland. Somehow, the situation escalated, and Officer Paz sprayed Plaintiff Steve Johnson in the face with

Oleoresin Capsicum ("O.C.") spray.[1] Johnson ended up on the ground. He was then arrested and criminally charged with the offenses of disorderly conduct, resisting arrest, and failure to obey a lawful order of the police. Those charges were later dismissed *nolle prosequi*. Beyond these basic points of agreement, the vast majority of the facts remain in dispute.

According to Johnson's version of events – which will be set forth only briefly here – he was quietly talking to his friend, Rashaun Adkins, in front of Adkins's house when two police officers approached and immediately ordered them to the ground. When Johnson asked "why?," the officers repeated their order without any explanation. When Johnson asked "why?" a second time and inquired whether he was under arrest, Paz sprayed him with O.C. spray and tackled him to the ground. The officers then beat him on the back of his legs before ultimately arresting him.

Officers Clark and Paz recount the night much differently. After receiving a citizen complaint, they arrived on the scene to find a group of loud and disorderly men. When they ordered the men to disperse, everyone complied, except Johnson. When Johnson declined to tell the officers where he lived, the officers ordered Johnson to produce identification, which he

---

[1] OC spray is commonly referred to as pepper spray.

refused to do. The officers also ordered Johnson to take his hands out of his pockets for safety reasons. Johnson again responded hostilely and refused to comply. Because of Johnson's repeated refusals to comply with the officers' orders to (1) sit down on the ground, (3) provide identification, and (3) show his hands, Paz attempted to arrest Johnson. When Johnson resisted, Paz sprayed him with O.C. spray. Johnson fell to the ground and a minor struggle ensued before the officers handcuffed him. Both officers maintain, however, that they never hit, beat, or kicked Johnson.

**B. Procedural Background**

On January 27, 2010, Johnson filed his complaint in the Circuit Court for Prince George's County, Maryland. (ECF No. 2). That complaint asserted six counts against Officer Paz: state law claims for assault, battery, negligence, and false arrest, as well as constitutional claims under 42 U.S.C. § 1983 for excessive force and arrest without probable cause. (*Id.*). The complaint also asserted two Section 1983 counts against Prince George's County premised on excessive force and arrest without probable cause. (*Id.*). After removal to this court on March 8, 2010 (ECF No. 1), Defendants filed a motion to dismiss or, in the alternative, for summary judgment on March 26, 2010 (ECF No. 14). That motion and an accompanying motion to strike

(ECF No. 19) were rendered moot when Johnson amended his complaint (ECF No. 21).[2]

On April 23, 2010, Defendants again moved to dismiss or, in the alternative, for summary judgment. (ECF No. 20). In a memorandum opinion and order issued on March 1, 2011, Defendants' motion – which was construed as one for summary judgment because of Defendants' reliance on materials extrinsic to the amended complaint – was denied in part and granted in part. (ECF Nos. 29 & 30). Johnson's claim for punitive damages against Prince George's County was dismissed, but genuine issues of material fact precluded judgment on all of Plaintiff's other claims. (*See* ECF No. 29). With respect to Plaintiff's constitutional claims against Paz, the court held that, viewing the facts in the light most favorable to Johnson, a reasonable jury could conclude that the officers lacked probable cause to seize Johnson and that the force they used in tackling, beating, and pepper spraying Johnson was "entirely unreasonable." (*Id.* at 10, 13). The court also held that the doctrine of qualified immunity would not shield Paz from liability for Plaintiff's Section 1983 claims if Johnson proved his version of events at trial. (*Id.* at 16-17). As to Johnson's state law claims, the

---

[2] The amended complaint restates the same counts as the original complaint, but with additional facts. (ECF No. 22).

court held that a reasonable jury could conclude that the officers (1) committed the intentional torts of assault, battery, and false arrest without legal justification; and (2) exhibited malice in how they responded to Johnson's "ordinary questions," so as to preclude Paz from relying on the doctrine of public official immunity. (*Id.* at 18, 20-21).

On July 28, 2011, Johnson's Section 1983 claims against Prince George's County were bifurcated from his claims against Paz for purposes of discovery and trial. (ECF Nos. 36 & 37). The first stage of discovery closed on January 30, 2012. (ECF No. 53). On March 1, 2012, Paz filed the instant motion for summary judgment. (ECF No. 55). Johnson filed an opposition (ECF No. 56), and Paz replied (ECF No. 57).

**II. Standard of Review**

Summary judgment may be entered only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted). At the same time, the facts that are presented must be construed in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

**III. Analysis**

The parties dispute whether the evidence adduced during discovery resolves the genuine issues of material fact that existed when Defendants previously (and unsuccessfully) moved for summary judgment. Paz contends that "recently obtained deposition testimony," including "Johnson's own testimony," corroborates the officers' versions of events and warrants summary judgment in his favor. (ECF No. 57, at 1). Plaintiff rejoins that Paz's motion is "based upon the same factual allegations" that were rejected in the memorandum opinion

denying Defendants' earlier motion. (ECF No. 56, at 2). Johnson is correct that Paz's motion must be denied for the same reasons that Defendants' previous motion was denied.

The crux of Paz's motion is that, during discovery, Plaintiff "admit[ted] that he refused to obey the commands of the officers and never sat down as requested." (ECF No. 55-2, at 10). Paz argues that this "admi[ssion]" necessarily leads to the following conclusions: (1) that the officers had probable cause to arrest Johnson for the offense of failure to obey a police order; (2) that the force used by the officers was objectively reasonable because failing to obey a police order constitutes a "serious infraction"; (3) that Paz had legal justification for all of his actions; and (4) that Paz did not act with malice. (*Id.* at 9-24). In Paz's view, it likewise follows from Plaintiff's "admi[ssion]" that none of Johnson's constitutional rights were violated, that Johnson's state law claims must fail, and that, in any event, Paz is entitled to both qualified immunity (as to Johnson's constitutional claims) and public official immunity (as to Johnson's state law claims). (*Id.*).

Paz primarily bases this line of reasoning on the following excerpt from Johnson's deposition:

> Q: How many times did they ask you to sit on the ground?

A: At least twice.

Q: Twice maybe more? Do you recall?

A: No. I don't think it was more than twice, though.

Q: Okay. So on two occasions they asked you to sit on the ground?

A: Yes.

Q: And on two occasions you declined to do so?

A: I asked them why twice.

Q: Okay. And in terms of asking them why, you still declined to do as the officer asked; is that correct? You never sat down on the ground?

A: No.

(ECF No. 55-5, Johnson Dep. at 65:2-16).

Despite Paz's attempt to characterize it as "newly obtained" evidence, this excerpt is entirely consistent with the affidavit Johnson submitted in opposition to Defendants' last motion for summary judgment. (*See generally* ECF No. 24-1, Johnson Aff.). Johnson has steadfastly maintained that, in response to the officers' requests for him get on the ground, he first asked them "why?" and then requested a reason for "why [he] should be sitting on the ground." (*Id.* ¶ 2). As set forth in detail in the memorandum opinion issued on March 1, 2011, if Johnson proves this version of events at trial, a reasonable jury could conclude that Johnson was pepper sprayed, tackled,

beaten, and arrested "merely [because] he asked two questions when the officers arrived on the scene and began commanding him to sit on the ground." (ECF No. 29, at 10). Thus, Johnson's deposition testimony only serves to confirm that a reasonable jury could find in favor of Plaintiff on both his constitutional and state law claims.[3]

Moreover, despite Paz's argument to the contrary, the testimony of witnesses Rashaun Adkins and Gladys Adkins corroborates Johnson's story and likewise reaffirms that genuine issues of material fact preclude summary judgment. Specifically, Rashaun Adkins testified that, after the officers ordered him and Johnson to the ground upon arriving at the scene, Plaintiff first asked them "Um, why do we have to lay on the ground. What did we do?" and then stated that "I am not

---

[3] To the extent that Paz is arguing that *any* failure to obey *any* police order necessarily gives rise to probable cause and justifies the use of force, such an argument is clearly meritless. It is well-established in Maryland that the offense of failure to obey an order "is contingent on the order being both reasonable and lawful." *Swagler v. Sheridan*, 837 F.Supp.2d 509, 531 (D.Md. 2011). Where the order is neither reasonable nor lawful, "the failure to obey a lawful order statute cannot serve as the basis for probable cause." *Id.* Johnson has offered evidence indicating that he was not acting disorderly or loudly when the officers approached the scene. (ECF No. 55-5, Johnson Dep. at 18:19-20; ECF No. 24-1, Johnson Aff. ¶ 2). Based on the present record, therefore, a reasonable jury could conclude that the officers' orders to get down on the ground were neither reasonable nor lawful (and therefore, cannot establish probable cause to arrest or justify the type of force Paz allegedly employed).

getting on the ground until you tell me why I have to lay on the ground." (ECF No. 55-13, R. Adkins Dep. at 19:6-12). According to Rashaun Adkins, the officers repeated their request again, Johnson again asked for an explanation, and then "[o]ne officer pepper sprayed [Johnson] and the other one pulled a slap stick out and hit him in his legs with his stick." (*Id.* at 22:1-14). Gladys Adkins, Rashaun's mother who observed some of the events from her window, testified that she heard the officers order Johnson and her son to the ground; observed that Mr. Johnson "did not get on the ground"; and – although she did not actually hear what Johnson said – surmised that Johnson "probably said I ain't getting on the ground; *for what*." (ECF NO. 55-15, G. Adkins Dep. at 12:22-13:12) (emphasis added). Gladys Adkins further testified that "[t]hen the police hand cuffed him. I don't know why they hand cuffed him, for no reason . . . [t]hey hand cuffed him and then the police started hitting him and I heard [Johnson] s[]ay, 'My eye. My eye.'" (Id. at 14:12-16). Thus, the testimony of both witnesses confirms Johnson's version of events (*i.e.*, that he was arrested, pepper sprayed, tackled, and beaten solely for asking the police officers to explain why he should get on the ground).

In sum, Paz fails to point to any new evidence that alters the court's prior conclusion that genuine issues of material fact preclude summary judgment. Indeed, although characterized

as “undisputed,” the vast majority of the “facts” set forth in Paz’s motion are based on the pre-discovery affidavits by Paz and Clark and are unsupported by any corresponding citation to the testimony of Johnson or the Adkinses. (*See* ECF No. 55-2, at 3-7). Thus, as Johnson contends, all of the material facts in this case continue to be in dispute, and Paz’s motion must be denied.

**IV. Conclusion**

For the foregoing reasons, the motion for summary judgment filed by Defendant Ruben Paz will be denied. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge